ALFRED NEWBY, Plaintiff-Appellant, *v.* THE CIVIL SERVICE COMMIS-
SION OF THE CITY OF CHICAGO, Defendant-Appellee.

First District (5th Division) No. 61387

Opinion filed February 27, 1976.

Washington, Kennon, Bryant & Hunter, of Chicago (Melvin Gaines, of counsel), for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Lucia T. Thomas, Assistant Corporation Counsel, of counsel), for appellee.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

After a hearing before the Chicago Civil Service Commission, plaintiff was discharged from his job with the Department of Water and Sewers of the City of Chicago (hereinafter Department) for allegedly refusing to wear a protective hat while working in the field as required by departmental regulations. The trial court affirmed the Commission's decision and plaintiff appeals, contending that his discharge was based on

a statement made while his statutory due process rights were being violated.

The following facts pertinent to this appeal were adduced at a hearing before the Chicago Civil Service Commission on December 12, 1973.

*For the City of Chicago*

*William H. Clarkin*

He is the Water Field Services Supervisor for the Department. He has been employed by the Department for 27 years. Plaintiff, a water rate taker, works under his supervision in the field. He identified four documents concerning employee safety requirements: directives dated November 30, 1972, and August 23, 1973, from the Department's Superintendent of Water Collections to all field personnel requiring them to wear a protective hard hat at all times while working in the field; a safety rule booklet distributed by the Department to all its employees requiring them to wear a hard hat at all times; a safety rule booklet distributed by the Department's Water Collection Division to all its employees requiring them to wear a hard hat at all times during the working day. All of the documents were admitted into evidence.

The Department requires its field personnel to wear a hard hat in order to protect them from possible injury while reading water meters in low-ceilinged dark areas and to identify them to the public while working. During October 1973 plaintiff was suspended by the Department for allegedly failing to wear his hard hat while working in the field, and at his request, a hearing concerning the Department's action was held before the Chicago Civil Service Commission on October 31. On the following date, November 1, 1973, his suspension apparently having lapsed, plaintiff came to the Department's office in the Chicago City Hall and reported to Clarkin for his assignment. William J. Quinlan, Supervisor of Water Administration, and Sherman Clark, Assistant Chief Water Rate Taker, were present when plaintiff reported to Clarkin. Clarkin asked plaintiff, "Are you ready to go back to work?" and plaintiff replied that he was. Clarkin then asked plaintiff, "Are you ready to wear your hard hat according to the safety regulations?" and plaintiff replied "No, I am not." Because plaintiff refused to wear the hard hat, Clarkin suspended him for 29 days.

*William J. Quinlan and Sherman Clark*

They are, respectively, the Supervisor of Water Administration and the Assistant Chief Water Rate Taker for the Department. They substantially corroborated Clarkin's account of the conversation between Clarkin and plaintiff at the Department's office on November 1, 1973.

*Alfred Newby, plaintiff*

He is a water rate taker for the Department. He has been employed

in that capacity for almost 5½ years. His basic duties are to take readings from water meters in areas of Chicago to which he is assigned and to report any meters that are malfunctioning. He never suffered any injuries while working, nor was he ever suspended before October 1973. He admitted that he had occasionally been directed to read meters in basements and that the hard hat he is required to wear offers protection against head injury in such places.

At his hearing before the Chicago Civil Service Commission on October 31, 1973, concerning his alleged failure to wear his hard hat in the field, he stated, "I will not wear the [hard hat] in areas where it is not needed." On the following day, November 1, he came to the Department's office in the Chicago City Hall and reported to Clarkin for his assignment. He did not have his hard hat with him then, even though he was reporting for a field assignment. When asked by Clarkin whether he was going to wear his hard hat, he replied, "I will wear the hard hat in areas where it is needed. When it is not needed in that particular area, I will not wear it." He denied that he ever categorically refused to wear the hard hat.

On November 27, 1973, the Department charged plaintiff with conduct unbecoming an employee of the City of Chicago for refusing to comply with departmental regulations requiring him to wear a hard hat while performing his duties. After a full hearing on December 12, 1973, the Chicago Civil Service Commission, in a written opinion issued on January 23, 1974, found that cause existed for plaintiff's removal and ordered that he be discharged from the Department. Thereafter, plaintiff filed a complaint for review in the circuit court of Cook County, and on September 10, 1974, the trial court affirmed the Commission's decision.

OPINION

Plaintiff's basic contention is that his discharge was premised on statements made while his statutory due process rights as a civil service employee were being violated. The Civil Service Act, which protects an employee within its coverage from summary discharge, provides:

> "Before any officer or employee in the classified service of any municipality may be interrogated or examined by or before any disciplinary board, or departmental agent or investigator, the results of which hearing, interrogation or examination may be the basis for filing charges seeking his removal or discharge, he must be advised in writing as to what specific improper or illegal act he is alleged to have committed; he must be advised in writing that his admissions made in the course of the hearing, interrogation or examination may be used as the basis for charges

seeking his removal or discharge; and he must be advised in writing that he has the right to counsel of his own choosing present to advise him at any hearing, interrogation or examination; and a complete record of any hearing, interrogation or examination shall be made and a complete transcript thereof made available to such officer or employee without charge and without delay." Ill. Rev. Stat. 1973, ch. 24, par. 10—1—18.

The record indicates that plaintiff, a civil service employee, made two inculpatory statements. At his hearing before the Chicago Civil Service Commission on October 31, 1973, concerning his alleged failure to wear his hard hat in the field, plaintiff, according to his own testimony, stated, "I will not wear the [hard hat] in areas where it is not needed." Plaintiff made a similar statement to Clarkin, his supervisor, the next day when he reported to the Department's office for his assignment. Both statements, plaintiff alleges, were made in the absence of any admonition concerning his due process rights under the Civil Service Act and both statements, plaintiff further alleges, constituted the basis for the filing of charges seeking his discharge.

■ ■   Plaintiff's reliance on the due process provision of the Civil Service Act is mistaken. It is clear that this provision pertains to interrogations or examinations of Civil Service personnel by or before "any *disciplinary* board, * * * departmental agent or investigator * * *" and envisages the extension of *Miranda*-type rights only in the context of disciplinary proceedings where removal or discharge of a civil service worker is being considered. (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 24, par. 10—1—18.) It is equally clear that neither plaintiff's hearing before the Chicago Civil Service Commission on October 31 nor his meeting with his supervisor on November 1 falls within the ambit of this provision. Plaintiff's hearing before the Chicago Civil Service Commission was initiated at his request and concerned a previous suspension for past noncompliance with departmental regulations. He was entitled to such a hearing under the Civil Service Act. (Ill. Rev. Stat. 1973, ch. 24, par. 10—1—18.) The purpose of the hearing was to review the propriety of his previous suspension, not to consider his discharge or removal. Plaintiff's meeting with his supervisor was a prerequisite to his resumption of his employment duties after his suspension. It was not a disciplinary proceeding, nor was his supervisor acting in the capacity of a disciplinary department agent. The purpose of the meeting was to provide plaintiff with an area assignment if he was willing to comply with departmental regulations, not to consider his discharge or removal.

■   Further, it is well established that an issue not presented to or considered by the trial court cannot be raised for the first time on

appeal. (*Ray v. City of Chicago*, 19 Ill. 2d 593, 169 N.E.2d 73; *Lakefront Realty Corp. v. Lorenz*, 19 Ill. 2d 415, 167 N.E.2d 236; *Kazubowski v. Gilio*, 132 Ill. App. 2d 1039, 271 N.E.2d 51; *Mrzlak v. Ettinger*, 25 Ill. App. 3d 706, 323 N.E.2d 796.) Such a rule is necessary in order to avoid the delay and expense incident to appeals, reversals, and new trials on grounds which might have been corrected in the trial court if the issue had been properly raised at that level. (5 Am. Jur. 2d *Appeal and Error* §545 (1962).) In the instant case, plaintiff maintained at his December 12 hearing before the Chicago Civil Service Commission and in his complaint for review with the trial court that the rule requiring him to wear his hard hat in the field was unreasonable, that he did not violate the rule when he met with his supervisor on November 1 because he was not in the field, and that his conduct in any case was not unbecoming an employee of the City of Chicago. Never did he contend that his statutory due process rights had been violated when he made his two inculpatory statements. Since plaintiff failed to raise this issue below, we cannot consider it on appeal. We, therefore, affirm the trial court's judgment.

Affirmed.

SULLIVAN and BARRETT, JJ., concur.