LA SALLE NATIONAL BANK, as Trustee, *et al.*, Plaintiffs-Appellants, v. HARRIS TRUST AND SAVINGS BANK, as Trustee, *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—89—1732

Opinion filed October 18, 1991.

H. Reed Harris, of Chicago, for appellants.

Stephen Richek, of Chicago, for appellees.

Kelly R. Welsh, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Lynn K. Mitchell, Assistant Corporation Counsel, of counsel), for *amicus curiae* City of Chicago.

JUSTICE GORDON delivered the opinion of the court:

Plaintiffs La Salle National Bank, as trustee under trust No. 104471, and H. Reed Harris appeal from a circuit court order dismissing their private cause of action against defendants Harris Trust and Savings Bank, as trustee under trust No. 40575, Chicago Cooperative Productions, Inc., James Petrozzini and American National Bank and Trust Company of Chicago, trustee under trust No. 104587—01, which sought to enforce a local zoning ordinance pursuant to section 11—13—15 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 11—13—15). The trial court dismissed plaintiffs' complaint, pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), for the reason that section 11—13—15 does not apply to home rule units. On appeal, plaintiffs contend that an amendatory provision which purports to render the relevant statute inapplicable to home rule units is unconstitutional and void. The City of Chicago filed an *amicus* brief in support of plaintiffs' position.

Plaintiffs filed a second amended complaint in this action on March 21, 1988. The complaint alleged plaintiffs are owners of residential property located within 1,200 feet of residentially zoned property (the property) in Chicago. In 1954, the Chicago Zoning Board of Appeals granted a special use authorizing use of the property as a parking lot for private passenger automobiles for a nearby real estate business, with a seven-foot strip to be landscaped, and with bumper guards erected around the blacktopped area of the property. The complaint alleged further that on June 26, 1985, plaintiffs filed a complaint with the Chicago Department of Inspectional Services alleging improper use of the property, but the city took no action.

Count I alleged violations of this special use, including use of the property for commercial vehicles; use of the property for repair and washing of automobiles; failure to landscape a seven-foot strip; failure to erect bumper guards; and extension of the parking lot by eight feet. Count II alleged violations of zoning ordinances. Count III alleged additional violations of the 1954 special use decision. Count IV alleged discontinuance of the special use decision for more than six months, thus rendering it void pursuant to a Chicago zoning ordinance. Plaintiffs sought temporary and permanent injunctions, costs, and attorney fees.

Petrozzini and American National Bank subsequently filed a section 2—615 motion to dismiss. On August 31, 1988, the court granted the motion to dismiss, finding that section 11—13—15 of the Municipal Code "is inapplicable for the reason that the City of Chicago Zoning Ordinance is an exercise of the City's Constitutional home-rule power and is not an ordinance adopted under ch. 24, sec. 11—13—1." The order also states that "plaintiffs' second amended complaint fails to allege sufficient facts to confer standing to sue on plaintiffs." On January 18, 1989, the trial court granted the city's motion to file a memorandum in support of plaintiff's motion for reconsideration. On June 1, 1989, the court denied plaintiffs' motion for reconsideration. On June 30, 1989, plaintiffs filed a notice of appeal.

OPINION

Defendants maintain that Chicago is a home rule unit, and that section 11—13—15 of the Illinois Municipal Code does not apply to home rule units. We disagree.

■ Section 11—13—15 authorizes "the proper local authorities of the municipality, or any owner or tenant of real property, within 1,200 feet in any direction of the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the alleged violation *** may institute any appropriate action" to enforce ordinance or other regulations. Ill. Rev. Stat. 1989, ch. 24, par. 11—13—15.

■ Section 11—13—1 of the Illinois Municipal Code provides that any grant of authority under Division 13, entitled "Zoning," does not apply to home rule units. (Ill. Rev. Stat. 1989, ch. 24, par. 11—13—1 ("This amendatory Act of 1971 does not apply to any municipality which is a home rule unit").) Our supreme court, however, has held that similar language in Division 13 of the Municipal Code cannot be construed so as to deprive a home rule unit of power.

In *City of Urbana v. Houser* (1977), 67 Ill. 2d 268, 367 N.E.2d 692, a home rule unit instituted demolition proceedings under a Division 13 power. The statute's final sentence read: "This amendatory Act of 1971 does not apply within the jurisdiction of any home rule unit." (Ill. Rev. Stat. 1971, ch. 24, par. 11—31—1.) The court held that this language could not "be construed as amending the statute so as to deny a home rule unit powers given it by the Constitution of 1970." *City of Urbana v. Houser*, 67 Ill. 2d at 272.

To hold otherwise "would authorize a non-home-rule unit to exercise a power prohibited to home rule units. *** [T]he framers intended home rule units to have greater powers than those of non-

home-rule units." (*Isberian v. Village of Gurnee* (1983), 116 Ill. App. 3d 146, 150, 452 N.E.2d 10, citing *City of Urbana v. Houser*, 67 Ill. 2d 268, 367 N.E.2d 692).) Such a classification would be "meaningless" and therefore unconstitutional. *City of Urbana v. Houser*, 67 Ill. 2d at 275.

Moreover, in *City of Urbana v. Houser*, the court held that, notwithstanding the possibility of the city's obtaining demolition authority by ordinance ("[t]o empower itself, an ordinance would be necessary" (67 Ill. 2d at 271)), to grant non-home-rule units statutory demolition authority and deny that same statutory authority to home rule units "would establish an unconstitutional classification and is meaningless." *City of Urbana v. Houser*, 67 Ill. 2d at 275 (construing Ill. Rev. Stat. 1975, ch. 24, par. 11—31—1).

In *Wellington v. City of Chicago* (1986), 144 Ill. App. 3d 774, 782, 494 N.E.2d 603, the court found that a pre-1970 statute granting authority to municipalities to impose taxes upon cab drivers remained effective even after the municipality became a home rule unit under the 1970 Constitution, and the court thereby rejected plaintiffs' argument that such authority did not apply to home rule units.

> "There is *** no apparent reason to find that the 1970 Constitution revoked pre-1970 municipal powers expressly granted by the General Assembly. Non-home-rule units have retained those pre-1970 powers [citations] and allowing for the 'liberal construction' mandated by the home rule section (Ill. Const. 1970, art. VII, sec. 6(m); [citation]) and the goal of granting greater power and autonomy to home rule units [citation], home rule units should not be denied pre-1970 municipal powers." *Wellington*, 144 Ill. App. 3d at 783.

Similarly, in *City of Carbondale v. Van Natta* (1975), 61 Ill. 2d 483, 338 N.E.2d 19, the court held that the 1971 amendatory provision, which contained language identical to the section 11—13—15 language purporting to disclaim the applicability of the statute to home rule units, did not revoke a home rule unit's extraterritorial zoning powers. "We can see no reasonable basis for differentiating between non-home-rule units so far as the power to zone extraterritorially is concerned." 61 Ill. 2d at 490.

Furthermore, "[a]bsent this offensively unconstitutional classification, the remnant of the statute is independent. So long as the unconstitutional portion can be severed, the remainder may stand unless it can be said that the General Assembly would not have passed the statute without the invalid portion." (*City of Urbana v. Houser*, 67 Ill. 2d at 275.) Here, section 11—13—15 was enacted prior to the 1971

amendment, which "dissipates any contention that the legislature would not have passed this statute without the sentence which we now strike." *City of Urbana v. Houser*, 67 Ill. 2d at 275, citing *City of Carbondale v. Van Natta*, 61 Ill. 2d at 491.

In addition, section 11—13—15 was amended in 1953 to enlarge the class of plaintiffs and increase allowable costs; amended in 1969 to enlarge the types of ordinance violations encompassed therein; and amended in 1977 to enlarge the area within which private plaintiffs were required to reside in order to bring suit. (*City of Chicago v. Westphalen* (1981), 93 Ill. App. 3d 1110, 1130, 418 N.E.2d 63.) The legislature clearly intended to expand the statute's scope. (*Westphalen*, 93 Ill. App. 3d at 1130.) It would be inconsistent with this legislative intent for us to find that no private actions under section 11—13—15 may be brought in municipalities functioning as home rule units.

Accordingly, we find that the City of Chicago's status as a home rule unit does not deprive plaintiffs of the statutory authority conferred upon them by section 11—13—15. Thus, section 11—13—15's grant of authority to adjacent landowners to sue for zoning violations remains in effect for property located in Chicago, notwithstanding Chicago's status as a home rule unit.

Defendants also maintain that plaintiffs have failed to comply with section 11—13—15 by alleging that plaintiffs' "property or person will be substantially affected by the alleged violation." (Ill. Rev. Stat. 1989, ch. 24, par. 11—13—15.) We disagree. That same section explicitly provides: "An owner or tenant need not prove any specific, special or unique damages to himself or his property or any adverse effect upon his property from the alleged violation in order to maintain a suit under the foregoing provisions." (Ill. Rev. Stat. 1989, ch. 24, par. 11—13—15.) Moreover, generally "it is the nature of the zoning violation itself that establishes the 'substantial effect' sufficient to enable an owner or tenant *** to maintain an action." (*Greer v. Illinois Housing Development Authority* (1986), 150 Ill. App. 3d 357, 390, 501 N.E.2d 723, *aff'd* (1988), 122 Ill. 2d 462, 524 N.E.2d 561 (factual allegation that zoning ordinance violation "poses a substantial safety hazard" was found to be sufficient to withstand a motion to dismiss).) In the present case, plaintiffs have included very detailed factual allegations of the special use violations, *e.g.*:

"A. It is not used solely for the parking of private passenger automobiles.

B. It is being used by commercial 'for hire' vehicles engaged in the food delivery business.

C. A strip of land seven feet wide along the East property line was never landscaped, and

D. Bumper guards were not erected around the blacktopped area of the lot."

Consequently, as in *Greer*, plaintiffs' factual allegations setting forth the violations are sufficient to support plaintiffs' cause of action.

■ Finally, defendants ask this court to "dismiss this case as being moot" on the basis that on June 29, 1989, the City of Chicago filed its own complaint for equitable and other relief, asking that defendants be restrained from using the property in question for the storage of automobiles.

The only relevant document in the record is a half-sheet which plaintiffs filed as a supplemental record pursuant to agreement of the parties. The half-sheet recites that the city "voluntarily dismissed" its action "with prejudice pursuant to compliance."

In *City of Chicago v. Westphalen*, the court acknowledged the distinctive interests of private landowners apart from municipalities in having rights to enforce zoning ordinances. In *Westphalen*, both the city and private property owners brought suit to enforce building and zoning codes pursuant to section 11—13—15 of the Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—13—15). The appellate court rejected defendant's assertion that in a 1971 case the trial court found defendant had complied with the applicable ordinance requirements. (*Westphalen*, 93 Ill. App. 3d at 1119-20.) The court held that the 1971 order merely dismissed the city's earlier suit against defendant, which had also charged him with building violations. The court found that the earlier dismissal order did "not reflect a finding of specific fact or a determination of the issues," and that nothing was "disclosed as to the substance of the dismissal," and therefore concluded that there was no collateral estoppel effect. *Westphalen*, 93 Ill. App. 3d at 1120.

Furthermore, nothing in the statute indicates that the city and private individuals may only use their enforcement rights alternatively under section 11—13—15. "[W]e cannot adopt the defendant's theory that the [plaintiffs] should be precluded from the judicial process because the [c]ity has also acted to enforce its ordinances," since the interests of private parties are not necessarily coextensive with those of the city. (*City of Chicago v. Westphalen*, 93 Ill. App. 3d at 1130.) Thus, the filing of the city's suit should not preclude suits by the neighboring landowners. See *City of Chicago v. Westphalen*, 93 Ill. App. 3d 1110, 418 N.E.2d 63.

Moreover, there is nothing in the record to indicate the basis upon which the city sought to voluntarily dismiss its suit with prejudice.

The record fails to indicate whether the dismissal was based on full compliance, which might render the action by the private parties moot, or simply compliance with factors of paramount interest to the city.

The mootness issue was not considered in the trial court. There is little argued here by the parties or supported in the record to permit this issue to be determined in this appeal. Consequently, our decision here does not preclude the trial court on remand from determining whether the property is now in full compliance with all violations alleged in plaintiffs' complaint.

Accordingly, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for further proceedings consistent with the holdings contained herein.

Reversed and remanded.

LORENZ, P.J., and McNULTY, J., concur.